## PENNISTON *v.* KERRIGAN.

1. The court erred in sustaining a demurrer to that ground of the caveat to the will which alleged that the will was void because of undue influence exercised upon the mind of the testator, which substituted the will of another for that of the testator. The allegations in this ground of the caveat were not merely conclusions of the pleader. Sufficient facts are alleged, which, if true, and which must be accepted as true with reference to the demurrer, to set aside the will.

2. The court did not otherwise err in ruling on this demurrer to the caveat.

3. The court having erred in striking the ground of the caveat alleging undue influence, the trial of the case thereafter was nugatory, and no ruling will be made upon the errors alleged to have been made as contained in the grounds of the motion for a new trial.

No. 4440. December 12, 1924.

Appeal. Before Judge Wright. Floyd superior court. June 7, 1924.

The will of Joel Branham, executed April 24, 1920, so far as material here, bequeathed to his daughter, Georgia Corinne Penniston, one U. S. liberty bond for $1000, or its value in money, and devised to his only other daughter, Jessica C. Appleton, "all the rest of my estate real and personal." A codicil executed January 25, 1921, provided that in the event testator should dispose of any of certain bonds held by him, the legacy to Mrs. Penniston should be reduced to $500; and that in the event Mrs. Appleton should

die before the testator died, the whole estate, except the legacy to Mrs. Penniston, should go to the two daughters of Mrs. Appleton, now Mrs. Kerrigan and Mrs. Randolph. A second codicil, executed on August 22, 1921, restored the provision of the original will that Mrs. Penniston should receive a liberty bond for $1000, or its value in money, and named as executrixes Mrs. Kerrigan and Mrs. Randolph. The executrixes named by the original will were Mrs. Appleton, Mrs. Kerrigan, and Mrs. Randolph. This codicil provided: "In all other respects I confirm my said will as my last will and testament." Upon the application for probate of the will in solemn form Mrs. Penniston filed a caveat upon the grounds, after amendment: (1) the will and codicils were not executed freely and voluntarily, but said Branham was moved thereto by undue influence and persuasions over him by his daughter, Mrs. Jessica Appleton, and his granddaughters, Mrs. Kerrigan and Mrs. Randolph. (2) Said will and codicils are void, because Mrs. Appleton, Mrs. Kerrigan, and Mrs. Randolph were guilty of fraudulent practices upon testator's affections and sympathy, and were also guilty of misrepresentations to the injury of the caveatrix. (3) Said will and codicils are void, because they were executed under a mistake of fact as to the acts and conduct of the caveatrix. (4) The will offered for probate is not the will of said Branham, because he revoked the same and endeavored to destroy the same.

The ordinary admitted the will to probate, and Mrs. Penniston took an appeal to the superior court. The allegations of the caveat as amended are substantially as follows: (1-2) That in 1907 or 1908 there was pending between Mrs. Appleton and her husband a suit for divorce; that because of the strong resemblance of Mrs. Appleton to her mother and the sympathy testator felt for her in her trouble, she obtained a strong hold upon the mind of testator; that, realizing this fact, Mrs. Appleton conceived the idea of depriving caveatrix of her rightful share in said estate, and began poisoning the mind of testator at a time when his fears and sympathies for her were strongly aroused, and proceeded deliberately and falsely to make to him wrongful and untrue charges against caveatrix, to accuse caveatrix of having no love or affection for testator and of being undutiful and unworthy of his consideration, of having aided or tried to aid the husband of Mrs. Appleton in the divorce proceedings between them; that Mrs. Appleton falsely and untruthfully

represented to the testator that she and her two daughters alone were truly devoted to him and were dutiful, and were alone entitled to consideration from him; that these acts and efforts were continued by Mrs. Appleton until her death about the latter part of 1920 or early part of 1921, and culminated in the making of the will mentioned; that up to the time of making said will it had been the desire of testator that his children should share equally in the distribution of his property, and he had in 1900 executed a paper intended as a will, leaving the property to them equally; that it was only after testator had become old and feeble and his mind had been constantly and continually harrowed for many years by the misrepresentations of Mrs. Appleton that she succeeded in substituting her will for testator's wishes; that the influence of Mrs. Appleton continued, after her death, to have undue effect upon testator, whose mind had been deeply and wrongfully impressed with said untrue ideas, thoughts, and opinions which Mrs. Appleton wished testator to have concerning caveatrix; that it was under this influence, and the influence of Mrs. Kerrigan and Mrs. Randolph, who continued the tactics of their mother, Mrs. Appleton, after her death, and reiterated her misrepresentations concerning caveatrix, that the two codicils to testator's will were executed; that the same did not represent his wishes, but the substituted will of Mrs. Appleton and her two daughters.      (3)      That the mistake of fact on the part of testator as to the conduct of caveatrix consisted in his belief, instilled by the misrepresentations of Mrs. Appleton, Mrs. Kerrigan, and Mrs. Randolph, that caveatrix did not love testator as a daughter should and was unworthy to inherit her share of his estate; that caveatrix had assisted the husband of Mrs. Appleton in obtaining evidence to be used against the character of Mrs. Appleton in the divorce proceeding mentioned, which maddened and unbalanced the mind of testator toward caveatrix, and that it was while in this state that said will and codicils were executed as a result of said mistake of fact; that in spite of the protestations of caveatrix of innocence of the charges made against her, testator refused to listen, refused to comply with her request that he investigate as to her innocence, and continued to upbraid her and exhibited great anger towards her until shortly before his death, when he admitted the injustice of his action in excluding her from his will and codicils, except as to the $1000, and requested caveatrix to destroy the same.

(4) That several months prior to the death of testator Mrs. Kerrigan, Mrs. Randolph and her husband by overpersuasion, force, duress, and other compelling means, induced and compelled testator, against his will and desire, to leave his home and go to Washington, where they placed him, against his will, by use of the means aforesaid, in a sanitarium and under the watch and care of an attendant; with directions that he should not be permitted to go about the premises or the streets of the city [except] in the company of said attendant; that he vigorously and continuously protested against this action; that it grieved and humiliated him and caused him much suffering; that in order that caveatrix might procure his release from said sanitarium it was necessary for her to consent that the attendant should accompany testator to his home in Rome; that while at Rome under the care and attention of said attendant, being frail and feeble of body but of sound mind and fully capable of executing a will, he repeatedly attempted to get possession of the will offered for probate; that he directed said attendant to accompany him to the bank where it was kept, that he might destroy it; that he directed said attendant to go to the lock-drawer in the bank where the will was kept, and to destroy it or bring it to him that he might do so; that he delivered the keys to said box to said attendant and directed that he give the same to caveatrix and request her to destroy said will; that said attendant, by force, persuasion, and by refusing to obey said Branham and to do the things he wanted done, prevented said Branham from destroying said will, thereby forcing him, contrary to his will, to leave undestroyed and unchanged the will offered for probate; that during all of the time said Branham was under the care of said attendant in Rome he was not physically able to care for himself or to do the things with reference to said will which he requested said attendant to do, but was possessed of sufficient mental capacity to make a will valid and binding in law; that for these reasons the will offered for probate is not the will of said Branham, because he was prevented from destroying or changing the same, and that it was his intention that his property should be disposed of as in cases of intestacy; that said Branham did procure said will and was preparing to destroy the same, when he was requested by the attendant mentioned not to do so because he (the attendant) would be responsible therefor, and for the further reason that said Branham had

promised, in order to secure release from the sanitarium in Washington, to carry out any request or instruction given by said attendant; that upon this appeal by said attendant he replaced the will in the box, but on the following night he procured said will and attempted to throw it in the fire, but said attendant seized his wrist and prevented him from doing so and again told him that he must under no circumstances destroy the will, for the reasons above stated, and that thereupon said Branham replaced the will in the box; that upon both occasions said Branham expressed a desire and purpose to revoke and cancel said will and to destroy the same.

The propounder filed elaborate demurrers to the caveat. Separate clauses of the caveat were specially demurred to. In substance the grounds of demurrer are that the averments of the caveat are conclusions of the pleader, and do not set forth any issuable facts, or any legal reason for denying probate of the will. The court passed an order sustaining the demurrer "as to any averments with relation to an alleged revocation of said will and codicils thereto," and sustaining "all other averments of the caveat and amendments thereto, except as to the execution of said will and codicils thereto under a mistake of fact." The case was tried and resulted in a verdict finding against the caveat. A motion for new trial filed by caveatrix was overruled. Error is assigned upon exceptions pendente lite to the judgment on the demurrers, and upon the overruling of the motion for new trial.

*D. J. Meyerhardt, L. A. Dean, Lamar Camp,* and *Denny & Wright,* for plaintiff in error.

*Paul H. Doyal, Porter & Mebane,* and *Maddox, Matthews & Owens,* contra.

GILBERT, J. The allegations in the ground of the caveat to the will setting up the contention that the testator was unduly influenced in making the will, and that the will of others was substituted for the will of the testator, are not merely conclusions of the pleader. Some of the allegations in that ground of the caveat are allegations of fact. It is alleged that one of the daughters of the testator, mother of the defendants, poisoned the mind of the testator against the caveatrix by strongly arousing fears and sympathies on the part of the testator, and by deliberately and falsely making to the testator wrongful and untrue charges against caveatrix, to the effect that the caveatrix had no love or affection for the testator

and was undutiful and unworthy of his consideration; that caveatrix had aided the husband of the other daughter of testator, Mrs. Appleton, mother of the defendants, in a divorce proceeding between said daughter and her husband; that all of these efforts and acts of the mother of the defendants culminated in substituting her wishes for those of the testator; and that on the death of Mrs. Appleton her course of action was continued by her daughters; and that the codicils to testator's will were executed under the same influence, misrepresentation, and undue influence; and that the will and codicils do not represent the wishes of the testator, but are the substituted will of Mrs. Appleton and her two daughters.

It is true that the allegations of the caveat with reference to undue influence do not furnish information to the defendants of the exact or precise words and language used for the purpose of unduly influencing the testator. If this should be required in cases of this kind, it may well be doubted whether undue influence could ever be established. We can not think that such minute details are required in proceedings of this kind. The Civil Code (1910), § 3834, declares: "The very nature of a will requires that it should be freely and voluntarily executed; hence, anything which destroys this freedom of volition invalidates a will; such as fraudulent practices upon testator's fears, affections, or sympathies, duress or any undue influence, whereby the will of another is substituted for the wishes of the testator." If the courts should hold it necessary to allege the precise words employed to unduly influence the mind of the testator, that portion of the statute above quoted would become impotent and unenforceable. The impossible in pleading is not required. In order to make the statute enforceable the requirements of pleading should not be so strict as to render it impossible in any case to prove the allegation. When the trial on such an issue reaches the stage where evidence must be introduced to establish the allegations, we find that the rules of evidence in such a case established by long practice in the courts have taken into account the peculiar circumstances surrounding the issue, and the allegations necessary to be proved. In Redfearn on Wills and Administration of Estates, § 48, it is said: "A very wide range of testimony is permissible on the issue of undue influence. This is due to the fact that undue influence seldom can be shown except by circumstantial evidence. It results from the circumstances and

surroundings of the testator and his associations with the person or persons exercising the undue influence. For this reason it is proper, on this issue, to consider the testator's dealings and associations with the beneficiaries; his habits, motives, feelings; his strength or weakness of character; his confidential, family, social, and business relations; the reasonableness or unreasonableness of the will; his mental and physical condition at the time the will was made; his manner and conduct; and generally every fact which will throw any light on the issue raised by the charge of undue influence." Following the statement quoted a very clear and useful explanation of the kind and character of evidence admissible on the issue of undue influence will be found in sections 49 et seq., with citation of authorities in the footnotes. See also Grice on Executors, Administrators & Guardians, 290 et seq. If this ground of the caveat rested alone upon the allegation in regard to the divorce proceeding, the judgment striking the second ground of caveat could be treated as harmless, because the same issue was submitted to the jury under another ground of caveat. The second ground based on alleged undue influence also contained the other allegations hereinbefore stated. Is it a mere conclusion to allege that one of two daughters has represented to a father that the other daughter does not love the father? Love is and ever has been one of the most powerful motives that rule the human mind. In all history nothing has so wrung the parental heart with grief as the belief that a child is undutiful, unworthy, and unloving. Love has led to the greatest tragedies. It has destroyed cities and empires. In all ages in song and story love and unrequited love have been painted as the ruling passions of men and women. Next to love, perhaps, comes the desire for money, and the jealousies and suspicions that too often arise on the passing of a parent or ancestor whose worldly possessions are to be distributed among expectant heirs. We think that to allege in a caveat that one daughter has convinced a father that the other daughter does not love the father is to allege a fact and a most potent fact likely to influence the father in the execution of his will. The court erred in striking this ground of the caveat.

*Judgment reversed. All the Justices concur.*