GRASSHAM *v.* WARDLAW *et al.; et vice versa.*

Nos. 8351, 8352.  October 16, 1931.  Rehearing denied January 16, 1932.

*Robinson & Flynt* and *C. C. Grassham,* for plaintiff in error (caveatrix).

*Foley & Chappell* and *W. H. Young,* contra.

Hill, J.  A caveat was filed to the probate of the last will and testament of W. E. Wardlaw.  The caveat was based on the ground of mental incapacity on the part of the testator and undue influence by two brothers of the caveatrix, Mrs. Belle Wardlaw Grassham, who were legatees under the will; and on the further ground that the testator was imposed upon by false representations made to him by Albert and Ben Wardlaw, devisees in the will, as to the character of a legacy received by caveatrix, Belle W. Grassham, under the wills of C. J. and F. M. Frederick, in that the devisees, Albert and Ben Wardlaw, did falsely and fraudulently represent to testator that caveatrix, their sister, had received from C. J. and F. M. Frederick property which they, as nephews of C. J. and F. M. Frederick, were entitled to receive, and that caveatrix would not give them any portion of the property received from the estates of the Fredericks, which they were legally entitled to have, and that caveatrix received more property under the wills of the Fredericks than she in fact did

receive; and thereby they poisoned the mind of testator against caveatrix.

■ On the trial of the case Mrs. Belle Wardlaw Grassham, the caveatrix, was asked by counsel for the propounders what property she had inherited under the will of her uncle, F. M. Frederick. There was objection made by counsel for caveatrix, which objection was overruled, and the provision of the will was read to the jury as follows: "The other one half of said residue I give and bequeath to my niece, Belle Wardlaw 'Grassham, to be held intact and undivided, she to enjoy the rents, issues, and profits thereof until her youngest child becomes of lawful age, at which time said interest may be equally divided by the mother and without sale, if possible, between mother and child or children; and if mother be not in life, then between her children and descendants of any deceased child or children, the division to be per stirpes and not per capita, and to be made by the court without sale, if possible." The following bequest from the will of C. J. Frederick was also read: "I wish all of my interest in the real estate owned jointly by myself and my brother, F. M. Frederick, to be held in trust by my brother, F. M. Frederick, as trustee, the net income from same to be divided between my sister, Mrs. Clara Wardlaw and my niece, Belle Wardlaw, during their lifetime, at the death of either of them, the other still living, the net income from this property interest to go to the remaining one. Should my niece, Belle Wardlaw, marry and bear children, this property or the proceeds of same to be held in trust until all of her children, should she have any living, become of age; if she should die without leaving any living children, this property interest to go to my brother, F. M. Frederick." Error was assigned on the admission of this evidence. The court did not err in admitting this evidence. It was responsive to the charges made in the caveat.

■ In another ground of the motion for new trial error is assigned because the court refused to permit the witness, Mrs. Belle Wardlaw Grassham, the caveatrix, to explain that "the interest she obtained from the will of C. J. Frederick, and certain property which was bequeathed to her as a life-estate, has not netted her any income at all, but on the contrary the expense has exceeded the income for each year up to the present time." It is proper to state, at this point, that the same question is involved in regard to

what the caveatrix received under the wills of F. M. Frederick and C. J. Frederick. In view of the fact that the terms of the wills of F. M. Frederick and C. J. Frederick had been put in evidence, it was prejudicial and erroneous to refuse to allow the caveatrix to explain what the provisions of those wills actually netted her. It is true that in *Jones* v. *Grogan,* 98 *Ga.* 552 (25 S. E. 590), it was held: "Nor was there any error in striking this ground of caveat after the same had been amended by alleging that the testator believed the brother in question owned property to the amount of $3,000, when in fact the brother owned only $300. An heir at law can not, in any event, caveat the probate of a will on the ground that at the time of its execution the testator was misinformed or mistaken as to the amount or value of the property owned by such heir." That ruling is not in conflict with what is here ruled. There the effort was merely to prove that the testator acted upon erroneous information or mistaken facts. Here the ground of the caveat is that testator in executing his will acted under undue influence, that influence being false representations by the brothers of caveatrix as to what she had received under the wills of her uncles, F. M. and C. J. Frederick. The question is not so much as to whether testator acted under mistaken facts, as it is as to whether he acted under undue influence alleged to have been exerted by the brothers of caveatrix, and thus induced testator to make a will which he would not have done except for such influence. Mrs. C. E. Purcell, a witness for the plaintiff in error, testified that the testator "went on to say that he had righted a wrong, that he was influenced in making his will to leave his daughter out, and he destroyed the will, and that now nobody could say that he had left his daughter out. I did not solicit this information. I never heard of it; that is their own private affairs, and I did not inquire into it. He said he burned the will. He said he burned it recently." Mrs. Lois Alexander, a witness for caveatrix, testified: "He says, 'Well, I have a will; I am going to destroy it.' He says, 'I left my daughter out of my will, and I don't like it, I am going to destroy it.' That was in my presence. It was in the car, and I was present. He said at the time he left his daughter out of the will and he wanted to burn it." K. O. Grassham, a witness for the caveatrix, testified: "I made the remark to him, I says, 'Well, you look like a young fellow this afternoon.' 'Well,' he says, 'I feel like one.'

He says, 'I feel better.' I says, 'Well, that is fine.' He says, 'I have just burned a will where I disinherited Belle. I want to say here and now that it will never happen again. . . He said that was the way he wanted his property left, share and share alike. He said that was the way he intended it when he burned it. He told me the reason he prepared the will that disinherited his daughter was because he had been overinfluenced by 'the boys.'" Mrs. Belle Wardlaw Grassham, caveatrix, testified: "We were upstairs—my mother and myself and my father, and Papa said: 'Clara, Clara, get me that thing—that will; I am going to burn it up,' and he took hold of the paper right in this end, and he said, 'Clara, now get me a match,' and Mama brought him the match, and lit it at this end, and he held it till he burnt the last piece of it. He says, 'Now, nobody will ever persuade me to leave my only daughter out of my will.' He never made a statement as to the cause that prompted him to make the will that disinherited me; not that I know of. In fact, I don't think I knew he had this first will until it was burned. I never talked to him any more about the will after he burned it. I never had occasion to see and observe my brothers together with my father practically all my life. My two older brothers are about twelve or thirteen or fourteen years older than I am, and of course they being older of course I was in the family all these years. I have been away twenty years, and at the times I would be back down here I didn't observe them together. He was susceptible to the influence of either Ben or Albert. He wouldn't have burned the will in my presence, saying he was going to let me share equally with the rest of them, if he hadn't been. I have had occasion to see them together off and on all my life, and that is what I base my opinion on. . . I saw a telegram or letter from one of them to him. It is burnt up now. Our home burned. It stated that they wanted him to come on home." The testator had four children. He left the caveatrix by his will only $10; and the fact that he destroyed a former will leaving the daughter only $10, declaring it was unjust, and after leaving his daughter in Kentucky and going back to Columbus, Georgia, he executed another will with the same provisions as to the daughter, was relevant.

■ Other grounds of the motion for new trial complain that the court in his charge expressed opinions as to what had been

proved. In view of the rulings made above, this cause of complaint will not likely occur on another trial.

■ Another ground of the motion for new trial complains that the court erred in illegally admitting to the jury certified copies of the last will and testament of Frank M. and C. J. Frederick. In view of the grounds of the caveat, this was not error.

■ Ground 16 of the motion for new trial complains because the court failed to charge the jury one of the main contentions of the caveatrix, as embodied in paragraph 2 of the caveat, as follows: "For that also the said W. E. Wardlaw, the deceased, did not execute the pretended will with full knowledge of its contents, but that the same was signed by him without the knowledge of its contents and without the knowledge that he had disinherited caveatrix, in that it was his intention in making said will to divide his property equally between his children, and that the said pretended will was not in truth and in fact the will of the deceased, W. E. Wardlaw; but was the expression of the desires of Albert Wardlaw and Ben' Wardlaw, devisees in said will, who had the same prepared according to their wishes, and not according to the wishes of W. E. Wardlaw, deceased." The court in his charge substantially covered this ground. If the caveatrix desired a more complete charge, a written request should have been duly presented to the court.

■ Other grounds of the motion for new trial do not show error requiring the grant of a new trial. As the case goes back for another trial no opinion is expressed as to whether the evidence authorized the verdict.

■ Under the rulings in the case of *Penniston* v. *Kerrigan*, 159 *Ga.* 345 (125 S. E. 795), the court did not err in overruling the special demurrers to the caveat.

*Judgment reversed on the main bill of exceptions; affirmed on the cross-bill of exceptions. All the Justices concur.*