1. The court erred in sustaining the demurrers to that ground of the caveat which alleged that the will was void because of undue influence. The allegations in this ground of the caveat, as attacked by the demurrers, were not merely conclusions of the pleader; nor were they too indefinite, loose, vague and uncertain to set forth any issuable facts, or any legal reason for denying probate upon the ground of undue influence. Sufficient facts are properly alleged, which if true, and which must be accepted as true with reference to the demurrer, to set aside the will.
2. Where the court, on demurrer by the propounder, strikes from the caveat averments properly alleging undue influence exercised over the mind of the testator, this will not result in the reversal of a final judgment in favor of the propounder, where it appears that the caveators were given full benefit of the contention as asserted in the caveat so stricken. In the circumstances of the present case, as shown by the record, it can not *Page 647 
be said by this court that the caveators were given full benefit on the trial of the contention that the will offered for probate was void because of undue influence. For that reason an erroneous ruling on the demurrers did not afterwards become harmless error.
3. The court having erred in striking from the caveat proper allegations of undue influence, and such error not having been cured by what occurred at the trial, no ruling will be made upon the errors alleged to have been made as contained in the grounds of the motion for new trial. In such circumstances the trial was nugatory. Penniston v. Kerrigan, 159 Ga. 345
(125 S.E. 795).
 No. 16171. APRIL 15, 1948. REHEARING DENIED MAY 14, 1948.
After the nominated executors had expressly declined to do so, Mrs. Ruby Holmes Levens, widow of Fred B. Levens, offered an instrument, dated March 4, 1946, purporting to be the last will of Fred B. Levens, for probate in solemn form, and prayed that letters of administration with the will annexed be issued to her. It is alleged in the caveat that the testator had previously made two other wills, one on July 14, 1945, and the other during January of 1946. The will of March 4, 1946, bequeathed to Bernard Lance Levens and Lurlie Lucile Levens Johnston, children of the testator by a former marriage, $100 each and the balance of his estate to the propounder and her two children. Upon the application for probate in solemn form, Bernard Lance Levens and Mrs. Johnston filed a caveat upon the grounds of testamentary incapacity and undue influence exerted over the testator by the propounder. The ordinary overruled all the grounds of a demurrer which attacked the allegations of the caveat, and after hearing all the evidence in support of and against the will, rendered a judgment in favor of the will. The caveators carried the case by appeal to the Superior Court of Carroll County. When the case reached that court, the trial judge, on September 11, 1947, sustained, subject to the right to amend within a specified time, some of the grounds of the demurrer, to which ruling exceptions pendente lite were duly certified and filed, and overruled others, to which there is no exception. Therefore it is unnecessary here to set out and deal with those grounds of the demurrer which the court overruled, and we shall not do so. *Page 648 
In paragraph 1 of the caveat, after alleging that the caveators were heirs at law of the testator because they are the issue of a marriage between him and their mother, Mrs. Minnie Morgan Levens, it was further alleged: "The marriage between the mother of caveators and caveators' father, Fred B. Levens, was dissolved by divorce about the year 1922, and their father married Mrs. Ruby Holmes Levens about the year 1928, and lived with her until the time of his death May 27, 1947." The quoted part of the paragraph was specially demurred to upon the ground that it is "wholly immaterial and irrelevant, illustrates no issue in said case, and therefore should be stricken." This ground of the demurrer was sustained.
In paragraph 5 of the caveat, after alleging that the testator did not execute the pretended will freely and voluntarily, it was further alleged, "but was moved thereto by undue influence, false and fraudulent persuasions, threats and violent coercion over him by Mrs. Ruby Holmes Levens, the applicant in this case, and said pretended will is not, therefore, the will of Fred B. Levens, but is the will of Mrs. Ruby Holmes Levens, the undue influence, false and fraudulent persuasions, threats and violent coercion used by the said Mrs. Ruby Holmes Levens to unduly persuade, force and coerce said Fred B. Levens to execute said pretended will being as more fully detailed herein." The quoted part of this paragraph was specially demurred to upon the ground that it is a mere conclusion of the pleader without facts sufficiently alleged or set forth to show "undue influence, false and fraudulent persuasions, threats and violent coercion," and being purely conclusions of the pleader, should be stricken as being too indefinite, loose, vague and uncertain. This ground of the demurrer also was sustained.
Paragraph 6 of the caveat is as follows: "Prior to the year 1944, said Fred B. Levens suffered from cirrhosis of the liver, arteriosclerosis, enlarged spleen, elongated and tortuous aorta, and other serious and debilitating ailments and diseases. In the latter part of the year 1945, his physical condition was such that he realized he was unable to carry on the large and profitable oil distributing business which he operated in Carrollton and outlying territory, and that it was necessary for him to make *Page 649 
provision for someone else to carry on this enterprise during the few remaining years of life that he realized would be left him, and to maintain and operate said business after his death so that it would continue to be a going and profitable business. Accordingly he arranged with his son, Lance Levens, one of the caveators herein, to leave the business connection which his son had in Macon, Georgia, and remove himself and family to Carrollton in order to carry on said oil business during the remainder of his father's lifetime and after his death. Pursuant to the arrangement between Lance Levens and his father, said Fred B. Levens, a will was executed by Fred B. Levens in January, 1946, under the terms and provisions of which Fred B. Levens gave to his son, Lance Levens, a property right in one-half interest in said oil business, said will containing a further provision reducing the legacy therein bequeathed by Fred B. Levens to his wife, Mrs. Ruby Holmes Levens, in the event of her remarriage.
"After the execution of this will and the removal of Lance Levens and his family to Carrollton, and after Lance Levens had entered upon the operation of said business for his father, Mrs. Ruby Holmes Levens determined and purposed in her own mind to cause said Fred B. Levens to revoke said will and to execute another will, making no substantial provision for any person other than herself and her two daughters, and leaving the entire estate of the father of your caveators to herself and said two daughters. Said Ruby Holmes Levens determined to use any means necessary to accomplish this objective and to take advantage of her husband in his weakened and enfeebled condition and to coerce, threaten, intimidate, and force her husband to do as she directed in this regard, contrary to his own will, purpose and desire. The pretended will which is offered for record in this case is the result of such plan and scheme of said Ruby Holmes Levens, affectuated and accomplished by her unlawful, fraudulent, and coercive practices over and against said Fred B. Levens, and as a result of her undue influence and persuasions over and against him, and was not executed freely and voluntarily by said Fred B. Levens, and is not his will, but the will of his said wife.
"Whereupon said Ruby Holmes Levens commenced to constantly *Page 650 
importune Fred B. Levens to revoke said will and to execute the pretended will offered for probate in this case, and to threaten him with lawsuits in the event he did not do so, shouting haranguing, and screaming at him both daytime and night-time that he must do so, that she would not tolerate the existing will, and persisting in this course of conduct so that life became unbearable in his weakened, sick, and debilitated condition.
"In order to escape from this constant shouting, haranguing, and screaming of his wife and from her persistent threats and annoyance, caveators' father, said Fred B. Levens, on January 26, 1946, took a trip to Florida, returning to Carrollton on or about February 28 following. He was neither physically nor mentally capable of driving to Florida and was driven there by his son, who subsequently returned to Florida and drove him back to Carrollton. While in Florida said Fred B. Levens drank intoxicants constantly and also took sedatives, opiates, drugs, and barbiturates. When said Fred B. Levens returned from Florida on or about February 28, 1946, both his physical and mental condition had greatly worsened, and his mind had become so impaired by the progress of his disease and ailments and by the use of drugs and alcohol that he was not possessed of the capacity to resist the threats and influences of his wife, nor was he possessed of sufficient mind to realize what he was doing, and he was not of sound and disposing mind and memory. At this time his condition of cirrhosis of the liver had progressed so that it had affected the brain. His arteriosclerosis had so progressed that his mind was affected thereby and he had arteriosclerosis of the brain. He was suffering from hoarseness and cough. His abdomen was enlarged, the spleen was enlarged to about 2-fingers breadth below the costal margin and he suffered from edema in his lower extremities. His heart was greatly enlarged, especially the left ventricle, the aorta being further elongated and tortuous. His mind was so bad that at times he was completely unaware of who he was, where he was, or with whom he was. He craved drugs. The first two nights after his return, he slept outside the home in the trailer in which he had made the Florida trip.
"Said Ruby Holmes Levens seized upon the opportunity presented *Page 651 
her by the impaired body and mind of her husband, and proceeded to speedily accomplish her purpose of bringing about the execution of the pretended will which she now offers in this case for probate. She told Fred B. Levens that he must change the then existing will making the aforesaid provision in favor of his son, and execute a will leaving everything to her and their daughters, except maybe a few dollars to caveators, that their daughters had to be educated, and he could not afford to leave anything to his children by his first marriage (although she well knew that Mr. Levens had made provision for the education of said daughters by giving them $15,000 in United States Bonds), that if he didn't revoke the then existing will and execute the will which she demanded, leaving substantially all of his property to her and their two daughters, she was going to break the then existing will, that she had been to see a lawyer and had learned that the then existing will could be broken because at the time of its execution he had not been possessed of sufficient mind to make a will. Said Ruby Holmes Levens also told her husband in this connection, `If you don't do what I tell you to do, I'll put you where you will have to do what they tell you to do,' meaning thereby, as her husband understood her to mean, that if he didn't obey her directions and do her bidding in regard to the pretended will now offered, she was going to have him committed to an institution for the insane. She also told him that if he did not obey her in respect to said will, she would cut off his supply of drugs and would expose him as a user of drugs. Said Ruby Holmes Levens repeatedly yelled and shouted these things to her said husband from the time he returned from said Florida trip until the execution of the pretended will now offered for probate. On one occasion she shouted these things at him for over an hour, yelling and hollering at him, gesticulating, and stamping her feet on the floor. On at least two other occasions she shouted and hollered for more than thirty minutes each.
"By these undue influences and false and fraudulent persuasions, threats, and coercive means the said Ruby Holmes Levens forced and intimidated caveators' father to execute said pretended will, and it is not his free and voluntary will, probate *Page 652 
thereof would be a fraud upon caveators and their father, and probate should be denied."
This entire paragraph of the caveat was demurred to generally upon the ground that the allegations therein made were mere conclusions of the pleader, alleging facts which are wholly immaterial and irrelevant and illustrating in nowise any issues in the case, and because it alleges conclusions regarding a prior will, which is not a real objection to the probate of the present will. Special demurrers were also interposed to separate clauses of the same paragraph and to the paragraph as a whole, upon the grounds that they were purely conclusions of the pleader, wholly irrelevant and immaterial, wanting in particularity as to time, place, and dates, and illustrating no issue in the case. The court sustained all of the demurrers and struck from the caveat the entire paragraph. The case was tried at the October term of the court, and the jury returned a verdict in favor of the propounder. A motion for new trial based on the usual general grounds was filed and afterwards amended by adding 19 special grounds. The court overruled the amended motion for new trial and the case comes to this court by a bill of exceptions assigning error on that judgment and on the exceptions pendente lite.
1. In substance, the grounds of demurrer which were sustained are that the averments of the caveat with reference to undue influence are mere conclusions of the pleader, and too indefinite, loose, vague and uncertain to set forth any issuable facts, or any legal reason for denying probate upon that ground. Upon application of the principles of law announced by this court in Penniston v.Kerrigan, 159 Ga. 345 (125 S.E. 795), Stephens v.Bonner, 174 Ga. 128 (162 S.E. 383), and Trust Company ofGeorgia v. Ivey, 178 Ga. 629 (173 S.E. 648), to the averments of the caveat in the instant case, we think, when considered as a whole, that they properly allege such undue influence as to invalidate the will offered for probate, treating them as true for purposes of the demurrer, and this being the case, the court erred in sustaining *Page 653 
the demurrers. The Code, § 113-208, declares: "The very nature of a will requires that it should be freely and voluntarily executed; hence, anything which destroys this freedom of volition invalidates a will; such as fraudulent practices upon testator's fears, affections, or sympathies, duress or any undue influence, whereby the will of another is substituted for the wishes of the testator." And in Redfearn on Wills and Administration of Estates, § 48, it is said: "A very wide range of testimony is permissible on the issue of undue influence. This is due to the fact that undue influence seldom can be shown except by circumstantial evidence. It results from the circumstances and surroundings of the testator and his associations with the person or persons exercising the undue influence. For this reason it is proper, on this issue, to consider the testator's dealings and associations with the beneficiaries; his habits, motives, feelings; his strength or weakness of character; his confidential, family, social and business relations; the reasonableness or unreasonableness of the will; his mental and physical condition at the time the will was made; his manner and conduct; and generally every fact which will throw any light on the issue raised by the charge of undue influence."
While it may be said in the present case that some of the statements contained in the caveat, and to which special demurrers were interposed, standing alone would appear to be conclusions of the pleader, but when considered in connection with other averments of fact they cease to be such.
It is also true in the present case, as it was in thePenniston case, supra, that the allegations of the caveat do not in each instance furnish the exact or precise words and language employed for the purpose of unduly influencing the testator or the exact dates upon which this is said to have occurred. However, if that should be required in cases of this kind, it may well be doubted whether undue influence could ever be established. The impossible in pleading is not required. We are therefore of the opinion, and so hold, that the averments of the caveat, as they are fully set out in our statement of facts, were sufficient properly to allege undue influence, and this being true, they should not have been stricken on demurrer. *Page 654 
2. It is insisted in the brief for the defendants in error that, even if it can be said that the ruling in the present case on the demurrers was erroneous, as contended by the plaintiffs in error, such error was afterwards cured on the trial by the caveators being permitted to introduce their evidence in support of the stricken allegations, and by the charge of the court upon the issue of undue influence. This position is supported byNorthwestern Mutual Life Insurance Co. v. Suttles, 201 Ga. 84,105 (38 S.E.2d 786); Hudgins Contracting Co. v.Redmond, 178 Ga. 317 (4) (173 S.E. 135); Cozart v.Johnson, 181 Ga. 337 (2) (182 S.E. 502); Ellis v. FirstNational Bank of Atlanta, 182 Ga. 641 (4) (186 S.E. 813);Harris v. Neuman, 183 Ga. 398 (3) (188 S.E. 689);Fidelity Deposit Co. v. Norwood, 38 Ga. App. 534 (1c) (144 S.E. 387). With respect to this contention, we have carefully examined the voluminous record in the present case, and while we shall not in this opinion undertake to point out the specific instances which make the rule announced in the above-cited cases inapplicable here, it is sufficient to say that, in the circumstances of this case as revealed by the record, the erroneous ruling on the demurrers was not rendered harmless by what afterwards occurred on the trial.
3. Headnote 3 requires no elaboration.
Judgment reversed. All the Justices concur.