## STEPHENS *et al. v.* BRADY.

No. 17991. Argued October 14, 1952—Decided November 13, 1952— Rehearing denied November 25, 1952.

*Martin, Snow & Grant,* for plaintiffs in error.

*Anderson, Anderson, Walker & Reichert,* contra.

ALMAND, Justice. ▆ One ground of the propounder's motion for a directed verdict in favor of the will was that "The evidence shows a prior will, which left no legacy or devise to Mr. Stephens, and he therefore has no such interest as is required of a person to allow him to caveat a will, and because the evidence shows and statement of counsel in his place admitted that a prior will made by Mrs. Stephens in 1946 was duly and properly executed and that it was a valid will"; and that, since all the pleadings related only to fraud and undue influence as being exercised against the interest of R. A. Stephens, the husband, and none of the evidence related to any fraud or undue influence against Mrs. Witcher, the daughter, a verdict in favor of the propounder was demanded.

The propounder in her application to probate the will of the testatrix named the husband and daughter as heirs at law of the testatrix, and they filed their objections to the probate of the will as heirs at law; and, when the propounder joined issue with the caveators on the trial of the case, she prima facie admitted that the caveators, as heirs at law of the testatrix, were such persons as could contest the will. *Lamb* v. *Girtman,* 26 *Ga.* 625 (5). This admission as to the interest of the caveators was not destroyed by the admission in evidence during the trial of a prior unprobated will of the testatrix, apparently valid on its face, wherein the husband was disinherited. The interest of the husband in the estate of his deceased wife, as an heir, was not severed by the mere existence of a prior will, but would continue to exist until that former will was probated. If the former will had been offered for probate, unquestionably the husband would have been entitled to file a caveat. The execution of a second will by the testatrix could not affect the right of the husband to contest the probate of the first will. The mere existence of a prior unprobated will could have no affect on the interest of the husband, as an heir, to caveat the second will.

The exact point under consideration has not previously been before this court. However, the rulings in *New* v. *Nichols,* 73 *Ga.* 143, *Chidsey* v. *Brookes,* 130 *Ga.* 218 (60 S. E. 529, 14 Ann. Cas. 975), and *Foster* v. *Foster,* 207 *Ga.* 519 (63 S. E. 2d, 318),

support our conclusion. Outside authorities on this question are meager and divided. The cases of Marr *v.* Barnes, 126 Kan. 84 (267 Pac. 9), Murphy's Executor *v.* Murphy, 23 Ky. Law Rep. 1460 (65 S. W. 165), and Lonas *v.* Betts, 160 Fed. 2d, 281, support our ruling; and In re Livingston's Estate, 179 Iowa 183 (153 N. W. 200), Succession of Feitel, 187 La. 595 (175 So. 72), and Cowan *v.* Walker, 117 Tenn. 135 (96 S. W. 967), support the contrary view. These last-cited cases apparently hold that an heir who was disinherited by an earlier valid, unprobated will cannot caveat or contest a later will. We are of the opinion that the reply to these cases is well stated in Marr *v.* Barnes, 126 Kan. 84, supra, where the Supreme Court of Kansas said: "How an *unprobated* will could be said to be a *valid* will and used in litigation as a *valid* will to the prejudice of an heir who has never had a chance to question its validity calls for a subtlety of reasoning which we would not care to follow." Our ruling here is not in conflict with *Churchill* v. *Neal*, 142 *Ga.* 352 (82 S. E. 1065). All that that case holds is that a legatee in a prior will who was omitted from a subsequent will has such an interest as would support a caveat to the probate of a second will.

■ The propounder also moved for the direction of a verdict in favor of the will and against the caveat, on the ground that the evidence demanded a finding against the caveators on the issues of fraud and undue influence raised in the caveat.

A will must be freely and voluntarily executed, and anything which destroys the freedom of volition, such as fraudulent practices upon the testator's fears, affections, or sympathies, or any undue influence, whereby the will of another is substituted for the wishes of the testator, will invalidate a will. Code § 113-208. A will procured by misrepresentation or fraud of any kind, to the injury of an heir at law, is void. § 113-209.

"Undue influence in procuring a will may exist in many forms, and it may be operated through diverse channels. The existence and effective power of undue influence is not always susceptible of direct proof. It may be proved by circumstantial evidence. *Davis* v. *Frederick*, 155 *Ga.* 809, 817 (118 S. E. 206); *Cook* v. *Washington*, 166 *Ga.* 329, 356 (143 S. E. 409); *Stephens* v. *Bonner*, supra [174 *Ga.* 128, 162 S. E. 383]; *Peretzman* v.

*Simon,* 185 *Ga.* 681, 686 (196 S. E. 471). Since it seldom can be shown except by circumstantial evidence, including the surroundings of the testator and his associations with the person charged with exercising the undue influence, it is proper on an issue of this kind to consider the testator's dealings and associations with the beneficiary of his bounty; his habits, motives, feelings; his strength or weakness of character; the reasonableness or unreasonableness of the will; his mental and physical condition at the time the will was made; his manner and conduct; and generally every fact which will throw any light on the issue raised by the charge of undue influence. *Penniston* v. *Kerrigan,* 159 *Ga.* 345, 350 (125 S. E. 795)." *Brumbelow* v. *Hopkins,* 197 *Ga.* 247, 252 (29 S. E. 2d, 42). "Fraud is a distinct head of objection to the validity of a will, from importunity and undue influence; usually they are the very opposites of each other. Both are equally destructive of the validity of a will." *Terry* v. *Buffington,* 11 *Ga.* 337 (8) (56 Am. D. 423).

We have carefully read all the evidence in this case, consisting of more than 200 typewritten pages. Relating to the issues of fraud and undue influence as raised by the caveat, the following is a summary of the evidence introduced by the caveators: The testatrix, formerly Emily Damour, married R. A. Stephens in 1908. At that time Stephens was a barber. Mrs. Stephens was a sister of the propounder, Mrs. Brady, she being two·years older than Mrs. Brady. The Damour family, including Mrs. Brady, did not approve of the marriage of the testatrix and Stephens, and on many occasions the testatrix was chided by them for marrying beneath her station, and over a long period of time, due to the fact that Stephens was a barber and that the family did not approve of him, suggestions were repeatedly made to the testatrix that she ought to leave him. As a result of this marriage a daughter, Emily, was born in 1908, and she married James Witcher in 1934. For a long period of time during the life of the testatrix, and up to the date of her death, the relationship between her and the propounder was exceedingly close. They were together practically every day, and particularly they would eat dinner together at a restaurant, and nearly every night they would talk on the telephone around midnight for as long as 30 or 40 minutes at a time. There was

evidence from which the conclusion could be drawn that the propounder has a strong and positive character, and that she usually had her way with the testatrix. A reasonable conclusion could be drawn that the testatrix, though having a strong will of her own, was easily influenced and controlled at times by her sister, the propounder. There was evidence that for a long period of time the propounder had referred to the testatrix's husband in remarks made to the testatrix, as being low-down, that he was a gambler, that he was not faithful to her, that he was running around with a named woman, that he could not be depended upon, and she, the propounder, did not understand why the testatrix lived with such a man. The testatrix's daughter and son-in-law testified as to many conversations they had heard between the propounder and the testatrix, and it appears from their testimony that the propounder constantly kept before the testatrix charges that her husband was no good, not dependable, and was running around with another woman.

There was evidence that the testatrix was a person of a jealous nature, and from innocent circumstances (such as her husband talking to a woman), she would draw conclusions as to his conduct, when his actions could not be said to have warranted any conclusion that he was guilty of misconduct. There was testimony by the husband of the woman that the testatrix thought her husband was running around with, that the two families were friendly, that the testatrix and her husband visited in their home, and that there was no foundation whatever for any charge or rumor that there had been any misconduct between the husband of the testatrix and the wife of the witness.

Under the testimony of the husband and from other testimony, the jury could have drawn the conclusion that all charges that he was a gambler, low-down, undependable, and ran around with other women, were without foundation, but that, on the contrary, he had been faithful to his marital obligations.

The propounder introduced in evidence a will alleged to have been executed by the testatrix on September 19, 1946, in which she bequeathed her personal effects to her daughter, Mrs. Witcher, and directed her executor to hold the remainder of her estate together so long as either her sister, the propounder, or her brother, should live, and pay the net income to her daugh-

ter, and after the death of her brother and sister the estate was to be delivered to her daughter. The attorney who drew this former will testified that no one other than the testatrix had anything to do with the data given him at the time he drew this will; and that the testatrix, in explaining why she did not leave anything to her husband in that former will, stated that she was doing so because he had been running around with another woman.

As to the execution of the second will, the attorney who drew the same testified that the testatrix and the propounder came to his office together, and told the attorney that they wanted to make their wills, and he got information separately from the parties and drew the will of the testatrix. After the attorney had drawn the will for the testatrix and she had read it over and stated that it expressed her wishes, he asked her, "Did you intend that your husband should get the $100 a month immediately after you died or did you intend that he should get it after your sister died?" and she replied, "I intend for him to get it after my sister dies." The wills of the testatrix and the propounder were executed by the parties at the same time.

There was evidence that the propounder in her own right owned considerable property, and that the testatrix left an estate of about the same value as the propounder's estate.

To paraphrase the words of Justice Gilbert in *Penniston* v. *Kerrigan,* 159 *Ga.* 345 (125 S. E. 795) (a case involving a caveat which alleged undue influence by one daughter over a father, asserting she had represented to him that another daughter did not love him, and that the latter was excluded from his will): In song and story, love and unrequited love have been painted as ruling passions of men and women. For one to represent to a wife that her husband is unfaithful to his marital vows, and giving to another the love and affection due his wife, whether the representation of infidelity be true or false, is likely to strongly influence her in the disposition of the property she may leave.

We are of the opinion that the evidence on behalf of the caveators was sufficient on the issues of fraud and undue influence to have gone to the jury. The mere absence of direct evidence and circumstances showing that the propounder prac-

ticed fraud or undue influence at or about the time the last will was executed did not, as contended by the propounder, demand a finding in her favor, for the reason that there was evidence, direct and circumstantial, from which the jury could have drawn the conclusion that this last will as executed by the testatrix resulted from prior fraud and undue influence practiced by the propounder upon the testatrix, and that these prior actions of the propounder controlled the mind of the testatrix at the time she executed the last will. See, in this connection, *Trust Company of Ga. v. Ivey*, 178 *Ga.* 629, 641 (173 S. E. 648). The case being one that should have been submitted to the jury upon the issues raised by the caveat, it was error for the court to direct a verdict in favor of the propounder, and the ground of the motion for a new trial assigning this direction as error was erroneously overruled.

*Judgment reversed. All the Justices concur.*