### S98A0735. BOHLEN v. SPEARS et al.
#### (509 SE2d 628)

SEARS, Justice.

William Bohlen, the propounder of the July 31, 1992, will of Pauline Spears, appeals from the trial court's judgment denying the probate of the will based upon a jury's findings that the will had been procured by undue influence and fraud. Because we conclude that there is insufficient evidence to support the jury's findings, we reverse.

Pauline Spears died May 15, 1996, at the age of 92. She never married, was one of ten children, and was survived by many nieces and nephews. Spears lived alone until May 1990 when she fell and was injured. Her nephew Bohlen, together with his wife, found Spears and took her to the hospital. On the doctor's advice, she moved to a retirement home. On June 2, 1990, Spears granted a general power of attorney to Bohlen, superseding a power of attorney she had granted to her brother, Clayton.

On July 31, 1992, Spears executed her will in the office of her attorney, Roy Lambert. Her estate was worth approximately $600,000 and consisted of both liquid assets and an 8/10ths undivided interest in a family farm of approximately 287 acres. The will named 23 individual beneficiaries and also contained bequests to Spears's church. The will devised Spears's interest in the farm to Bohlen, gave over $70,000 to Bohlen and his family by specific bequest, and named Bohlen residuary legatee. Other nieces, nephews, and Spears's still surviving brothers received bequests of between $2,000 and $5,000, as well as, with minor exceptions, an equal share of Spears's personal property. The will also named Bohlen as executor.

The 1992 will modified a substantially similar 1991 will; the 1991 will named Bohlen together with his two sons as recipients of

the farm interest and as residuary legatees. Evidence showed that in 1988, Spears had drafted a will[1] that left the farm interest to three of her brothers by naming them as residuary legatees. In 1978, she had executed a will leaving her interest in the farm to the same three brothers[2] with other siblings also as primary legatees. Under both the 1988 and 1978 distribution schemes, Bohlen and his immediate family were not singled out, but were to receive property as named members of a class of relatives.

Bohlen sought to probate the July 31, 1992 will, but 13 of Spears's heirs at law challenged the will's probate. The probate court admitted the 1992 will for probate, but on appeal to superior court, a jury found that the will was the result of undue influence and fraud.

1. Bohlen contends that there was insufficient evidence from which the jury could conclude the will was procured by undue influence. For the reasons that follow, we agree.

(a) Regarding the 1992 will, Lambert testified that Spears was meticulous with her personal business, and contacted him to change her 1991 will. He added that he visited with her several times, that she wrote in her own handwriting what she wanted each of her relatives to receive, and that he relied upon that writing in drafting her new will. He added that no one was present when he spoke to her about changes to her will or when she handed him the handwritten list of bequests. According to Lambert, Bohlen never said anything to Lambert about Spears's new will, and, as far as Lambert knew, Bohlen was unaware of the changes. Lambert stated that, after he prepared a new will, he took a copy to Spears and arranged for her to come to his office to execute it. He added that he, Spears, and two of his employees were present in the same room when Spears executed the new will. He added that he read the will to Spears, and asked her if she was executing it freely and voluntarily and if this was "actually what you want." Spears answered yes to these questions. Lambert added that he reviewed the various bequests, and that he specifically reviewed the bequest of the farm to Bohlen. Spears stated that the bequests were exactly what she wanted. Lambert testified that he never had any discussion with Bohlen or any member of his family about the will. He also added that he saw Spears on a number of occasions after the will was executed, and that she never stated she wanted to change the will. Finally, Lambert testified that Spears never told him that anyone was pressuring her to make a will, and that she knew "exactly what she was doing" and "exactly what she wanted to do." Lambert's employees who witnessed the will gave sub-

---

[1] Only an unsigned copy of the 1988 draft was admitted at trial.
[2] At this time, Spears held only a 3/10ths undivided interest in the land.

stantially the same testimony as Lambert regarding the execution of the will.

Moreover, it is undisputed that Bohlen and his wife stepped forward to take primary care of Spears after she injured herself, and one of the appellees' witnesses testified that Spears told her that she wanted Bohlen to have something extra for taking care of her.

(b) As for undue influence, it is clear that

> [i]nfluence is considered undue only if " 'it constrains or coerces a person into doing that which his best judgment tells him not to do and deprives him of his free agency and substitutes the will of another person for his own.' [Cit.]" *Sims v. Sims*, 265 Ga. 55, 56 (452 SE2d 761) (1995). Moreover, a will can be invalidated only by such undue influence as operates on the testatrix's mind at the time she executes the document. *Boland v. Aycock*, 191 Ga. 327, 329 (12 SE2d 319) (1940).[3]

Furthermore, " '[b]ecause "(t)he right to make a will is a valuable right," a stringent standard must be met to deprive a person of this power.' "[4]

Construing the evidence most favorably to the appellees, there is no direct evidence that Bohlen exercised undue influence over Spears, within the foregoing definition, before or at the time she executed her will. Although the appellees presented some evidence that Bohlen pressured Spears to change her will, and slight evidence that Spears had the possibility for being confused in 1992, there was no evidence that pressure or mental confusion operated on Spears at the time she executed the will, or that the combination constrained or coerced her to substitute Bohlen's will for that of her own. In fact, the only evidence surrounding the actual making of the will is that Spears privately consulted with her attorney regarding the will on several occasions, that Bohlen was never mentioned by Spears, that Bohlen never contacted the attorney, that Bohlen was never present at any of the meetings regarding the will, that Spears was knowledgeable regarding her desires, and that she acknowledged before several witnesses at the time she executed the will that she was doing so voluntarily and that her will was exactly as she wanted it. Stated differently, the uncontradicted evidence regarding the execution of the will is that Spears signed her will freely and voluntarily, that Bohlen did not participate in the execution of the will, and that Spears was of sound mind at the time she executed the will.

---

[3] *McConnell v. Moore*, 267 Ga. 839, 839-840 (483 SE2d 578) (1997).
[4] *McConnell*, 267 Ga. at 841.

Considering these factors, as well as the principle that a stringent standard must be met to deprive a person of the valuable right to make a will, we conclude that the evidence was insufficient to support the finding of undue influence and thus to deprive Spears of her right to make a will.[5]

2. Similarly, we conclude the evidence is insufficient to support the jury's finding that the will was procured by fraud. The type of fraud that " 'will invalidate a will must be fraud which operates upon the testator, i.e., a procurement of the execution of the will by misrepresentations made to him. It exists only when it is shown that the testator relied on such a representation and was deceived.' "[6] There is simply no evidence whatsoever in the record that the alleged misrepresentations made by Bohlen deceived Spears into making her 1992 will.[7]

*Judgments reversed. All the Justices concur, except Benham, C. J., Hunstein and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

I respectfully dissent, as I believe there is evidence from which the jury could properly find undue influence and fraud.

The majority notes there is no direct evidence that Bohlen exercised undue influence over Spears at the time of her execution of the 1992 will. However, a caveat based on undue influence may properly be supported by circumstantial evidence, as such influence can seldom be shown except by circumstantial evidence. *Skelton v. Skelton,* 251 Ga. 631, 634 (5) (308 SE2d 838) (1983). To require that there be *direct evidence* of undue influence operating on the testatrix' mind at the time she executes her will is contrary to both the law and common sense; influence that has been exerted over a period of time so as to become pervasive will not necessarily manifest itself at the time of execution. Determining whether such influence was actually operating on the testatrix at the time of execution is the role of the factfinder.

Evidence was presented that in 1991 and 1992, Bohlen told others that Spears was devoid of funds, and that she stated the same. However, in addition to her ownership in the family land, the testatrix had liquid assets of approximately $300,000. Bohlen testified that he knew nothing of the testatrix' business affairs before 1994,

---

[5] Id.

[6] *Edwards v. Shumate,* 266 Ga. 374, 375-376 (468 SE2d 23) (1996).

[7] These alleged misrepresentations include, among others, that Bohlen's son told Spears that the price she had paid one of the caveators' parents for a 1/10 interest in the family farm was too great (the price had been based upon an appraisal obtained by the parent), and that Bohlen told Spears that a son of one of the caveators had stolen a lawn mower and a gas can from her.

when according to his testimony he first used the power of attorney. However, there was other testimony that in 1991 and 1992, he was not only stating that he knew Spears to be devoid of funds, but had also attended meetings between the testatrix and her accountant, beginning with the preparation of the testatrix' 1991 tax returns.

After Spears moved to the retirement center, Bohlen and his wife took primary responsibility for Spears' movements and schedule; although Spears could walk about town, she no longer drove. Spears reported to one nephew that Bohlen's wife told her she would be left without the Bohlens' care if the testatrix did not behave herself and do what Bohlen's wife said. To one friend, the testatrix expressed a great fear of going into a nursing home, expressed relief that the 1992 will was signed, and stated, that because of it, she "thought that she wasn't going to have to go." The testatrix displayed confusion and agitation about the preparation of a new will, telling friends and family that she was being pressured to prepare a new will, specifically saying to one nephew that Bohlen was pressuring her for a new will. She also stated to several people that the Bohlens would not permit her to return to live on the family farm, and there was evidence that the Bohlens prevented her from attending her church. There was also evidence that Spears stated to several witnesses that she wished the land to stay in the Spears name.

In addition, medical evidence showed that in 1996, the testatrix was determined to have severe Alzheimer's disease, with related "severe agitation worse in the past several years." In 1990, she was discovered to have some atrophy of the brain, and the physician who cared for her at that time testified she was not capable of complex reasoning about her business affairs, and was subject to being confused by others. This evidence of a diminution in mental capacity is relevant to the question of Bohlen's exercise of undue influence because the influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. *Skelton*, supra at 634 (5).

Although the majority characterizes evidence of Spears' weak mental state as "slight," the responsibility to weigh the evidence is the jury's, not this Court's. Whether undue influence was operating on Spears at the time she executed the 1992 will must be decided on the evidence. Essentially, the majority has weighed the evidence supporting a finding of undue influence and found that, in the majority's opinion, it is wanting. But the question is whether the *jury* could have found undue influence from the evidence presented. Viewed in favor of the nonmovant caveators, it could, and the court did not err in allowing the issue to be resolved by the jury.

Similarly, there is also evidence from which the jury could infer that the will was procured by fraud, which may also be shown by cir-

cumstantial evidence. See *Stephens v. Brady*, 209 Ga. 428, 435-436 (2) (73 SE2d 182) (1952). Testimony showed Bohlen was representing to other family members that the testatrix had no money, and that she believed this herself. Such a belief would allow Bohlen to exert his influence on the testatrix and substitute his will for hers. Further, there was testimony that Bohlen and his immediate family had misrepresented the actions of certain of the caveators, including those who had been prominent beneficiaries under previous wills. This issue, too, was properly for the jury's resolution.

I am authorized to state that Chief Justice Benham and Justice Hunstein join in this dissent.

DECIDED DECEMBER 4, 1998 —
RECONSIDERATION DENIED DECEMBER 17, 1998.

*Sell & Melton, Jeffrey B. Hanson, John D. Comer, E. R. Lambert,* for appellant.
*James E. Carter, Ted D. Spears,* for appellees.