## S01A0756. COOK v. HUFF et al.
(552 SE2d 83)

CARLEY, Justice.

In February of 1998, Milton Cook suffered a stroke and was unable to return home until July. In August, he executed a new will and died several months later. The will named his widow, Kathleen Cook (Propounder), as executrix, and she filed the document for probate. Mr. Cook and Propounder were married for 53 years and had four children. His three children by a former marriage (Caveators) contested the will on the ground of Propounder's alleged undue influence. The probate court admitted the will to probate, and Caveators appealed. The case was tried before a jury which returned a verdict for Caveators. Propounder appeals from the judgment entered on the jury's verdict.

1. Propounder urges that the trial court erred in denying her motions for directed verdict, judgment n.o.v. and new trial.

A trial court may grant a motion for new trial if, in the exercise of its discretion, it finds that a jury's verdict was against the weight of the evidence. OCGA § 5-5-21. However, when a trial court denies such a motion, the appellate court does not have the discretion to grant a new trial on that ground. "[W]e can only review the evidence to determine if there is any evidence to support the verdict. [Cit.]" *Drake v. State*, 241 Ga. 583, 585 (1) (247 SE2d 57) (1978). The standard of appellate review of the denial of a motion for new trial on the general grounds is essentially the same as that applicable to the denial of a motion for directed verdict or judgment n.o.v. See *Womack v. St. Joseph's Hosp.*, 131 Ga. App. 63-64 (1), (2) (205 SE2d 72) (1974), overruled on other grounds, *Herr v. Withers*, 237 Ga. App. 420, 422 (515 SE2d 174) (1999). The appellate courts "can only set a verdict aside, on evidentiary grounds, as being contrary to law in that it lacks any evidence by which it could be supported." *Gledhill v. Brown*, 44 Ga. App. 670, 672 (1) (162 SE 824) (1932). Accordingly, we must decide whether the evidence, when construed most favorably for Caveators, *demanded* a finding that the will was not the product of Propounder's undue influence.

Evidence showing only that she had the opportunity to influence her husband and that she receives a substantial bequest under the terms of his will is not sufficient to show that she exercised undue influence over him. *Harvey v. Sullivan*, 272 Ga. 392, 394 (4) (529 SE2d 889) (2000). However, the question of whether a will is the

product of undue influence is generally for the factfinder. *Mathis v. Hammond*, 268 Ga. 158, 160 (3) (486 SE2d 356) (1997). Accordingly, we would reverse the judgment entered on the jury verdict only if this case presents an exception to that general rule. Undue influence "may take many forms and may operate through diverse channels. [Cit.]" *Dyer v. Souther*, 272 Ga. 263, 264 (2) (528 SE2d 242) (2000). Moreover, its existence and effect can rarely be shown other than by circumstantial evidence. *Skelton v. Skelton*, 251 Ga. 631, 634 (5) (308 SE2d 838) (1983). Therefore, when a will is contested on the ground of undue influence, the attack may be supported by a wide range of testimony. *Dyer v. Souther*, supra at 264 (2). Here, there was evidence of pre-existing animosity between Caveators and their stepmother. *Cox v. Rutledge*, 18 Ga. 294 (1855). In determining whether she exercised undue influence,

> so as to substitute her will for that of her husband in his last will and testament, all of the circumstances including the conduct and demeanor of the parties with respect to each other, their comparative ages and mental capacity, and especially any physical and mental infirmity due to advanced age of the husband, may be taken into consideration.

*Trust Co. of Ga. v. Ivey*, 178 Ga. 629, 641-642 (5) (173 SE 648) (1934). " '[T]he amount of influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. (Cits.)' [Cits.]" *Skelton v. Skelton*, supra at 634 (5). Mr. Cook was elderly at the time he executed the contested will, he had recently suffered a debilitating stroke and was under medication. *Roberts v. Baker*, 265 Ga. 902 (463 SE2d 694) (1995). Thus, a lesser degree of influence would be required to overcome his free will. *Bowman v. Bowman*, 205 Ga. 796, 797 (2) (55 SE2d 298) (1949). There was evidence that Propounder attempted to alienate Mr. Cook from his other family members, especially Caveators, and that she actively encouraged him to execute the new will. *Penniston v. Kerrigan*, 159 Ga. 345, 349-351 (125 SE 795) (1924). In fact, she arranged the meeting with the drafting attorney and was present at the execution of the document. *Roberts v. Baker*, supra. The terms of Mr. Cook's August 1998 will were inconsistent with his long-standing expression of the testamentary intent to leave equal shares to his wife and children. The new will's provisions were more generous to Propounder and less beneficial to Caveators than those of his prior will. *Roberts v. Baker*, supra. " '[I]t is always proper to inquire whether the provisions of the will are just and reasonable, and in accord with the state of the [testator's] "family relations or the con-

trary." [Cits.]'" *Knox v. Knox*, 213 Ga. 677, 681 (3) (101 SE2d 89) (1957). Although this evidence did not demand a finding that the will was the product of Propounder's undue influence, it was sufficient to authorize the submission of that question to the jury. *Dyer v. Souther*, supra at 264 (2); *Roberts v. Baker*, supra at 904 (2); *Skelton v. Skelton*, supra at 633 (5). Because the evidence did not demand a contrary verdict to that returned by the jury's verdict in favor of Caveators, the trial court correctly denied Propounder's motions for directed verdict, judgment n.o.v. and new trial.

2. Propounder enumerates as error the denial of her motion in limine seeking to exclude evidence of other transactions either conducted by Mr. Cook personally or involving him. She contends that the evidence was not relevant. As previously noted, however, the jury is permitted to consider a broad range of circumstantial evidence in connection with the trial of a will contest involving the allegation of undue influence. *Dyer v. Souther*, supra at 264 (2).

> "[I]t is proper on an issue of this kind to consider the testator's dealings and associations with the beneficiary of his bounty; his habits, motives, feelings; his strength or weakness of character; the reasonableness or unreasonableness of the will; his mental and physical condition at the time the will was made; his manner and conduct; and generally every fact which will throw any light on the issue raised by the charge of undue influence. [Cit.]" [Cit.]

*Stephens v. Brady*, 209 Ga. 428, 433 (2) (73 SE2d 182) (1952). Considering the breadth of evidence admissible in support of a claim of undue influence, the trial court properly denied Propounder's motion in limine.

3. Over a hearsay objection, one of Caveators was allowed to testify that, when she and her husband arrived at the funeral home, she learned that "[Propounder] had told them to close the casket in our face." Propounder's objection should have been sustained, as this testimony is inadmissible hearsay. While the witness might be allowed to testify that she herself overheard Propounder direct that the coffin be closed, there is no hearsay exception which would permit the witness to testify that she spoke with some other unidentified individual who attributed that order to Propounder. To authorize a reversal, however, the evidentiary ruling must be harmful as well as erroneous. Considering the quantum of the admissible evidence regarding the bad feelings which existed between the parties (see *Cox v. Rutledge*, supra), the passing reference to the closed casket had no significant prejudicial impact on Propounder. See *Busby v. State*, 174 Ga. App. 536, 538 (1) (330 SE2d 765) (1985). Thus, even though the rul-

ing on the hearsay objection was erroneous, the error was harmless.

4. Propounder enumerates as error the trial court's refusal to allow her to call Mr. Cook's stockbroker as a rebuttal witness because his name did not appear on the witness list in the pre-trial order. The pre-trial order controls "unless modified at the trial to prevent manifest injustice." OCGA § 9-11-16 (b). A trial court has some discretion in the matter, and its decision to exclude a rebuttal witness will be affirmed unless that discretion is abused. See *Minnick v. Lee*, 174 Ga. App. 182, 184 (1) (329 SE2d 548) (1985). Propounder did not attempt to show the trial court that, under the circumstances, its failure to allow the stockbroker to testify would result in a manifest injustice. See *Allstate Ins. Co. v. Reynolds*, 138 Ga. App. 582, 588 (6) (227 SE2d 77) (1976). Compare *Minnick v. Lee*, supra at 184 (1). Instead, her attorney informed the trial court at the outset that, if Caveators' counsel was "going to object, I'll send [the unlisted witness] on back." When Caveators did raise an objection and the trial court indicated that it would not allow the stockbroker to testify, Propounder's lawyer acquiesced and stated "[w]ell, I'll send him on his way then." Under these circumstances, we find no abuse of the trial court's discretion. *Star Gas v. Robinson*, 225 Ga. App. 594, 596 (3) (484 SE2d 266) (1997), reversed on other grounds, 269 Ga. 102 (498 SE2d 524) (1998).

5. The denial of Propounder's motion for summary judgment is moot. *Kicklighter v. Woodward*, 267 Ga. 157, 162 (5) (476 SE2d 248) (1996). The sufficiency of the evidence to authorize a finding of undue influence must be determined on the basis of that submitted to and considered by the jury, not that which was before the trial court at the time Propounder filed her motion for summary judgment. As discussed in Division 1, the evidence produced on the trial of the case was sufficient to authorize the finding in favor of Caveators and against the probate of the will.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., Sears, P. J., and Hunstein, J., who dissent.*

SEARS, Presiding Justice, dissenting.

My review of the record leads me to conclude that the Caveators failed to offer sufficient evidence to overcome the Propounder's motions for directed verdict, judgment notwithstanding the verdict, and new trial. Therefore, I believe that the trial court erred in denying those motions, and I respectfully dissent from the majority's affirmance in this case.

The evidence of record shows that the Propounder and Cook were married for 53 years, and that Cook was well known in the Griffin community as a very strong-willed, independent, and sometimes overbearing individual. In February 1998, Cook suffered a stroke

that required his hospitalization for several months. In August 1998, Cook changed the terms of his will to make a more generous bequest to the Propounder, his wife, than he had previously devised, and to make a less generous bequest to the Caveators, his children by a former marriage, than he had previously devised. Cook died in January 1999, approximately five months after executing his new will.

The record shows that the stroke's impact upon Cook was primarily physical, as it left him confined to a wheelchair and made it difficult for him to perform certain physical tasks. As a result of his physical impairment, Cook suffered some depression, for which he was prescribed standard anti-depressant medication. The record does not show, however, that Cook suffered any mental impairment as a result of his stroke. In fact, Cook's personal physician testified that Cook's mental acuity was unimpaired by the stroke, and that the stroke caused no change whatsoever in Cook's mental abilities. Other witnesses' testimony established that even after his stroke, Cook remained firmly in control of his affairs, and (to quote one witness) continued to "rule the roost" at his home and in his business affairs.

This evidence is consistent with the testimony of those who witnessed Cook execute his new will. One witness to the will testified that he had known Cook for more than 40 years, and that before executing the will, Cook read its terms aloud and stated, "that's what I want." Another witness to the will testified that she had known Cook "for a long time," that he was clearly of sound mind when he executed the will, and that he did so voluntarily. Similarly, the attorney who drafted Cook's new will testified that he had known Cook for more than 40 years, and that when he met with Cook to discuss the terms of the new will, Cook explained to him that the Propounder had been his wife for 53 years and was entitled to a more generous bequest than the Caveators were entitled to receive.[1]

Because the right to make a will is extremely valuable, a high standard must be applied in order to deprive a testator of that right.[2] Undue influence upon a testator can be found to exist only if such influence constrained "a person into doing that which his [or her] best judgment tells him not to do and deprives him of his free agency and substitutes the will of another person for his own."[3] Stated differently, undue influence must be tantamount "either to deception or to

---

[1] The record shows that Cook first told the attorney that he did not want the Caveators to receive "a damn thing" under his new will, and then stated that he would leave each Caveator a $5,000 bequest, and that Propounder, who "deserved everything," would receive the remainder of his estate.

[2] *Brooks v. Julian*, 271 Ga. 766 (523 SE2d 862) (1999); *Bohlen v. Spears*, 270 Ga. 322, 324 (509 SE2d 628) (1998).

[3] *Bohlen*, supra; see *Brooks*, supra.

force and coercion, destroying free agency."[4] Undue influence can invalidate a will only if it operates on the mind of the testator at the time he executes the document.[5] Evidence of undue influence over the mind of a testator at any other time is largely irrelevant and cannot invalidate a will.[6] Moreover, this Court has long held that "the indulgence of [the] mere suspicion of undue influence cannot be allowed"[7] to supplant direct evidence on the issue.[8]

In this appeal, the Caveators based their claim of undue influence upon: (1) speculation that the Propounder had attempted to influence Cook to change his will against his own wishes; and (2) the presumption that the Propounder's spousal relationship with Cook allowed her to exert such influence. Not only are these insufficient grounds for a claim of undue influence, the record is void of any evidence to show that the Propounder actually exerted undue influence over Cook at the time he executed his new will.

The Caveators' chief witnesses were two medical experts who testified that they had reviewed Cook's medical records and theorized that an individual such as Cook, who was suffering from certain physical ailments, might have experienced some delusion as a result of those ailments. However, the record shows that these experts had never examined Cook and had never even met Cook before his death. Rather, their testimony was based entirely upon Cook's medical records, which were created several months before the new will was executed. As such, this evidence was irrelevant to the issue of whether Cook was under undue influence at the time he executed the new will.[9] As noted above, evidence concerning one's susceptibility to undue influence at any time that is remote to the execution of a will has no bearing on whether the will should be invalidated.[10]

Two witnesses also testified on behalf of the Caveators that they overheard the Propounder tell Cook that he should change his will to benefit her, and one of those witnesses testified that he overheard an argument between Cook and the Propounder concerning whether Cook should change his will. However, this evidence does not support the conclusion that Cook changed his will due to the Propounder's undue influence. Nothing in our case law stood to prevent the Propounder – who was, after all, Cook's wife – from discussing the terms

---

[4] *Cook v. Washington*, 166 Ga. 329, 348 (143 SE 409) (1928).
[5] *Bohlen*, supra; see *Brooks*, supra; *Boland v. Aycock*, 191 Ga. 327, 329 (12 SE2d 319) (1940).
[6] *McConnell v. Moore*, 267 Ga. 839, 841 (483 SE2d 578) (1997).
[7] *McConnell*, 267 Ga. at 841; *Dean v. Morsman*, 254 Ga. 169, 173 (327 SE2d 212) (1985).
[8] *Brooks*, supra.
[9] See *Brooks*, supra; *Bohlen*, supra.
[10] *McConnell*, 267 Ga. at 841.

of Cook's will with him.[11] In fact, Georgia law permitted the Propounder to exercise her influence in order to seek a beneficial bequest from Cook,[12] so long as Cook was able to choose between following his original testamentary intentions or acceding to the wishes of Propounder.[13] As explained above, the evidence in this case shows that Cook was capable of making that choice at the time he executed his new will.

As noted in a preeminent treatise on Georgia law, it is entirely permissible for spouses to make entreaties to one another with regard to the dispositions of their respective wills:

> The relation of a husband to his wife with whom he has lived many years is such that undue influence is difficult to conceive even where the greatest persuasion and importunity have been exercised . . . [and] the mere fact that the second wife is made a large beneficiary or the sole beneficiary to the exclusion of the children of the former marriage does not raise the presumption of undue influence.[14]

This Court has previously recognized that spouses may consult each other with regard to their respective wills,[15] and even attempt to influence one another with regard to the dispositions made therein.[16] As stated by this Court more than a century and a half ago:

> With respect to a will alleged to have been obtained by undue influence . . . it is not unlawful for a person, by honest intercession and persuasion, to procure a will in favor of himself or another; neither is it, to induce the testator, by fair and flattering speeches; for though persuasion may be employed to induce the dispositions in a will, this does not amount to influence in the legal sense. If a wife . . . has gained such an ascendancy over her husband, and so rivaled his affections that her good pleasure is a law to him, such an influence can never be a reason for impeaching a will made

---

[11] Furthermore, if it is true that Cook argued with the Propounder about the terms of his will, that very fact would tend to belie the Caveators' claim that Cook was mentally incapacitated and capable of being forced to change his will against his own wishes.

[12] Redfearn, Wills and Administration in Georgia, § 50, p. 59 (5th ed.).

[13] *Morgan v. Ivey*, 222 Ga. 850, 852 (152 SE2d 833) (1967).

[14] Redfearn, supra, § 60, pp. 115-116. See *Mosley v. Fears*, 135 Ga. 71 (68 SE 804) (1910).

[15] *Boland v. Aycock*, 191 Ga. 327, 329 (12 SE2d 319) (1940) ("It is entirely proper that husbands and wives should consult each other and endeavor to meet each other's wishes in the making of their wills."). See *Trust Co. of Ga. v. Ivey*, 178 Ga. 629, 641 (173 SE 648) (1934).

[16] *Boland*, supra.

in her favor, even to the exclusion of the residue of his family. Nor would it be safe to set aside a will, on the ground of [undue] influence . . . [or] advantage taken of the testator by his wife, although it should be proved that she possessed a powerful influence over his mind and conduct in the general concerns of life.[17]

Stated in more contemporary terms, it is permissible for spouses to discuss their wills with each other, to state their opinions regarding each other's testamentary dispositions, and to seek favorable bequests from each other. Spouses can influence each other with regard to important issues such as estate planning and testamentary dispositions. To characterize that influence as "undue" is contrary not only to well-established precedent from this Court, but also to sound public policy.

In conclusion, I believe that the majority opinion gives undue credence to the speculation upon which the Caveators' claims are based.[18] I also believe that the evidence submitted by the Caveators fails to show that the Propounder used deception, force or coercion in order to destroy Cook's free agency, thereby procuring a will by undue influence.[19] In fact, the Caveators' evidence is largely irrelevant to the issue of whether Cook was under undue influence at the time he executed his new will.[20] Finally, I believe that the majority errs by failing to view this case in the context of a spousal relationship.[21] Once this appeal is viewed within the proper context and according to this Court's own directives concerning the burden that must be carried to establish the existence of undue influence, it is clear that Propounder was entitled to either a directed verdict, a judgment notwithstanding the verdict, or a new trial. Therefore, I respectfully dissent, and I am authorized to state that Chief Justice Fletcher and Justice Hunstein join in this dissent.

DECIDED JULY 16, 2001 —
RECONSIDERATION DENIED SEPTEMBER 17, 2001.

---

[17] *Potts v. House*, 6 Ga. 324 (1849).
[18] See *McConnell*, supra.
[19] See *Cook*, supra.
[20] See *McConnell*, supra.
[21] See Redfearn, supra; *Potts*, supra.

*Howard P. Wallace*, for appellant.
*Shepherd & Johnston, William G. Johnston III*, for appellees.