**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 29, 2025**

# In the Court of Appeals of Georgia

A25A1416, A25A1476. PETERSON v. PETERSON et al; and vice versa.

PIPKIN, Judge.

This decades-long litigation regarding the estate of Charles Hugh Peterson is now on its fourth iteration before the Georgia appellate courts. See *Peterson v. Peterson*, 344 Ga. App. XXVIII (No. A17A2025) (Feb. 27, 2018) (unpublished) (*Peterson I*); *Peterson v. Peterson*, 303 Ga. 211 (811 SE2d 309) (2018) (*Peterson II*); *Peterson v. Peterson*, 352 Ga. App. 675 (835 SE2d 651) (2019) *(Peterson III)*. This case finally proceeded to trial and, after hearing the evidence, a jury found in favor of Appellees, Alex and David Peterson, on their claims of breach of fiduciary duty and breach of

trust against Appellant, Calhoun Peterson,[1] and awarded them damages and attorney fees. On appeal, Calhoun raises numerous claims of trial court error (A25A1416). In a cross-appeal, Alex and David contend that, if we reverse the judgment and order a new trial, we should also address certain trial court rulings (A25A1476). For the reasons discussed below, we affirm the jury's verdict and damages award in A25A1416 and dismiss as moot the cross-appeal in A25A1476.

This Court laid out the procedural history of this case in *Peterson III*. As relevant here:

> Charles Hugh Peterson died testate in 1994 and was survived by his wife, Mary, and their three sons Alex, David, and Calhoun. Mr. Peterson's will, which was probated in 1995, created two testamentary trusts: a marital trust for the primary benefit of Mary, and a residual "by-pass" trust for the benefit of Mary and the couple's three sons. Mary and her three sons were each designated a co-executor of the will and a co-trustee of both the marital and by-pass trusts. Item 5 of Mr. Peterson's will created a marital trust for Mary, while Item 6 created a by-pass trust for Mary and their three sons. . . .
>
> Sometime after the will was probated, a dispute arose between the co-executors and co-trustees over the administration of the estate and the by-pass trust, pitting Mary and Calhoun against Alex and David. Alex and David filed petitions for accounting and damages for breach of duties

---

[1] Calhoun Peterson is a party defendant both individually and as executor of the estate of Mary Peterson. For ease of reference, we will refer to these parties as "Calhoun."

as executors and trustees against Mary and Calhoun, and sought the removal of Mary and Calhoun as executors and trustees in probate court. Mary and Calhoun each moved for summary judgment on all claims, and the superior court granted their motions. Alex and David appealed those rulings.

In the first appearance of this case before this Court, we reversed the trial court's grant of summary judgment to Calhoun in an unpublished opinion. See *Peterson I*. One month later, the Supreme Court of Georgia in *Peterson II* reversed the trial court's grant of summary judgment to Mary for similar reasons. Both cases held that material issues of fact remained with respect to [Calhoun's and Mary's] failure to fully fund the trusts at issue in the case and whether [they] wasted assets.

(Footnote omitted.) Id. at 676-678. Following the reversals in *Peterson I* and *Peterson II*, the trial court again granted summary judgment to Mary and Calhoun. In *Peterson III*, Alex and David appealed that order, arguing that the trial court erred by "finding that Mary did not owe [them] a fiduciary duty when she exercised her power of appointment under [the] two trusts and ordered [them] to execute all conveyance documents submitted to them," and that the trial court erred "in concluding that Mary could act exclusively in her capacity as a beneficiary of both trusts in exercising her appointment power to convey trust assets." Id. at 676. We agreed and reversed the judgment of the trial court. See id.

3

The case finally proceeded to trial in August 2023, and, after hearing all of the evidence, the jury found in favor of David and Alex on their claims of breach of fiduciary duty as executors and as trustees against Mary and Calhoun.[2] Calhoun filed the instant appeal, raising numerous claims of trial court error; Alex and David also filed an appeal in order to preserve appellate arguments should this Court reverse the jury's verdict. We address the claims raised in Calhoun's appeal first.

**Case No. A25A1416**

1. Prior to trial, Calhoun filed a motion for partial summary judgment, arguing two main points: first, that Alex's and David's claims were barred as a matter of law because they triggered the *in terrorem* clause of their father's will, and, second, that Mary properly exercised her *inter vivos* powers of appointment to appoint certain property to herself and to Calhoun, foreclosing Alex and David's claims for breach of fiduciary duty. The trial court denied the motion on these grounds, and the case proceeded to trial.

In two separate claims, Calhoun challenges the trial court's pre-trial order denying his motion for partial summary judgment, one based upon the *in*

_____

[2] Mary died in March 2020, and her estate, with Calhoun as the executor, continued to pursue her claims in this case.

*terrorem* clause and the other based upon the *inter vivos* powers. However, the denial of Calhoun's motion for partial summary judgment is moot. See*College Park v. City of Sandersville*, 361 Ga. App. 529, 531 (1) (864 SE2d 680) (2021). Instead, "[t]he sufficiency of the evidence to authorize a finding of [a violation of the *in terrorem* clause and breach of fiduciary duty based on the *inter vivos* powers] must be determined on the basis of that submitted to and considered by the jury, not that which was before the trial court at the time [Calhoun] filed [his] motion for summary judgment." *Cook v. Huff*, 274 Ga. 186, 189 (5) (552 SE2d 83) (2001). Both issues were squarely before the jury at trial, and Calhoun does not allege that the evidence was insufficient to support the jury's verdict. See *College Park*, 361 Ga. App. at 531 (1). Accordingly, these claims fail.[3]

---

[3] To the extent that the special concurrence argues that we have improperly determined that the issues regarding the *in terrorem* clause and *inter vivos* powers have not been properly preserved for appellate review, such argument misses the mark. Indeed, the record shows that Calhoun moved for a directed verdict on the issue of the *in terrorem* clause, which the trial court denied. However, Calhoun does not challenge that ruling on appeal. Nor does he allege anywhere in his brief that the evidence presented to the jury was insufficient to support the verdict. Calhoun's sole focus on appeal is the trial court's ruling on partial summary judgment, and no pre-trial motion in limine or jury charge request buried in this 40 volume record will change that. Simply put, this Court can only address issues raised by Calhoun on appeal, not other issues that were objected to at trial but not argued in the party's brief.

2. Next, Calhoun alleges that the trial court erred by denying his pre-trial motion in limine to exclude evidence of family grievances and conflict that occurred outside the six-year trust statute of limitation period.

Prior to trial, Calhoun filed a motion in the trial court to prohibit Alex and David from "presenting or otherwise addressing [Mary's] or [Calhoun's] conduct that is not within the applicable statutes of limitation," arguing that "[t]here is no legitimate reason to air before a [] jury either the Plaintiffs' alleged grievances that are not actionable herein or any other aspect of the Peterson family history from long ago." After a hearing, the trial court denied the motion, concluding that "[e]vidence regarding the parties' relationships with and conduct toward each other may be relevant and admissible."[4]

On appeal, Calhoun contends that the trial court erred by denying his motion, arguing that "[t]he pre-limitations period evidence was inflammatory, prejudicial and irrelevant to the actual claims on trial." Our review of this claim is hampered by

---

[4] The record shows that Alex and David also filed a motion in limine to prohibit Calhoun from introducing evidence of alleged drug and alcohol use and bad behavior on their part. The trial court denied this motion, once again concluding that "[e]vidence regarding the parties' relationship with and conduct towards each other may be relevant and admissible."

Calhoun's briefing on this issue. In his brief, Calhoun provides a litany of record citations and exhibits from trial, spanning three pages, without any substantive discussion or legal analysis regarding the evidence admitted or why its admission was error under the rules of evidence. As noted by Calhoun, the family dynamics and issues spanned a 40-year period, and this Court cannot determine which pieces of evidence from this time span Calhoun takes issue with and why, other than his broad and general argument that *all* pre-limitations period evidence regarding family dynamics and infighting was irrelevant and prejudicial under OCGA §§ 24-4-402 ("Rule 402") and 24-4-403 ("Rule 403"). See *Keys v. State*, 365 Ga. App. 284, 287 (3) (878 SE2d 133) (2022) ("[I]t is not an appellate court's job to cull the record on behalf of [Calhoun] to find alleged errors. In fact, it is well established that the burden is on the party alleging error to show it by the record.") (citations and punctuation omitted). Further, Calhoun presents no argument or citation to authority explaining why a statute's limitation period would have any bearing on an analysis under Rules 402 or 403.

That said, "[w]e review the trial court's ruling on a motion in limine for abuse of discretion." *Ridley v. State*, 368 Ga. App. 481, 483 (890 SE2d 385) (2023). And,

based upon the record before this Court, we cannot say that the trial court abused its discretion by denying Calhoun's motion in limine. See OCGA §§ 24-4-401 through 24-2-403; *Harris v. State*, 314 Ga. 238, 262 (3) (a) (875 SE2d 659) (2022) ("The test for relevance is generally a liberal one, and relevance is a binary concept – evidence is relevant or it is not.") (citations and punctuation omitted); *Flowers v. State*, 307 Ga. 618, 622 (2) (837 SE2d 824) (2020) ("[T]he exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly.") (citation and punctuation omitted).

3. Next, Calhoun argues that the jury's award of compensatory and general damages was excessive.[5] Specifically, he argues that the jury's damages verdict awarding $1.6 million each to Alex and David was not supported by the evidence and that the jury award "improperly rewrote both Mr. and Mrs. Peterson's Wills and divided their assets as the jury saw fit." We disagree.

"The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly

---

[5] The jury also awarded attorney fees, but Calhoun does not challenge this award.

so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a). As this Court recently explained in *Geary v. Estate of Tapley*, 373 Ga. App. 561 (908 SE2d 324) (2024):

> An excessive verdict is a mistake of fact and addresses itself to the discretion of the trial judge, who, like the jury, saw the witnesses and heard the testimony. The trial court determines whether an award is within the range authorized by a preponderance of the evidence, and the court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence.
>
> The threshold for an appellate court to set aside a jury verdict approved by the trial court under OCGA § 51-12-12 (a) is extremely high. We may not substitute our judgment for that of the trial court on the fact-based question of whether the damages awarded were within the range authorized by a preponderance of the evidence; we instead must limit our review to whether the trial court, who saw the witnesses and heard the testimony, abused its discretion in denying the motion for a new trial.
>
> An abuse of discretion occurs (1) where the trial court failed to exercise its discretion in reviewing the award; (2) where the trial court's exercise of its discretion was infected by a significant legal error or a clear error as to a material factual finding; or (3) where the verdict was so excessive or inadequate as to be irrational and thus the apparent result of jury bias, prejudice, or corruption.

(Citations and punctuation omitted.) Id. at 566–567 (3). Applying these principals to the case before us, we hold that the trial court did not abuse its discretion.

9

Calhoun argues that the trial court failed to exercise its discretion in reviewing the award because the trial court initially stated in an email that it believed that the jury award was excessive, but then "changed its mind" and upheld the verdicts. However, "until an oral pronouncement is memorialized, the trial judge has broad discretion to amend, alter, or completely change his decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment." *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764, 772 (4) (b) (815 SE2d 70) (2018). Indeed, the judge made clear that while he initially believed the award to be excessive, after further review of the case, he concluded that the case did not meet the standard of OCGA § 51-12-12 and upheld the jury's damages award. Accordingly, this claim fails.

Calhoun also claims that the trial court abused its discretion because, he argues, the evidence did not support a damages award higher "than the maximums claimed by Plaintiffs" for compensatory damages; he also argues that the general damages award was not supported by the evidence, rendering the jury's damages award excessive. Our review of this claim, however, is hampered by the verdict form itself. At trial, Alex and David sought both general and compensatory damages for their

10

claims of breach of fiduciary duty and breach of trust against Calhoun and Mary. While the verdict form did separate out the claims of breach of fiduciary duty and breach of trust against Calhoun and Mary individually, it did not require the jury to specify or separate their damages award for each claim or specify if they were awarding compensatory or general damages. Calhoun did not object to the jury form based upon its failure to specify what type of damages the jury awarded or how much of the award was allocated to each damages type. The jury then granted $1.6 million to each brother, an amount that likely included both general and compensatory damages. "In the absence of a verdict form requiring more specificity, the method by which a jury reaches a particular verdict is not a matter of which this Court can take judicial cognizance." (Citation and punctuation omitted.) *Lawrenceville v. Alford*, 366 Ga. App. 226, 229 (1) (881 SE2d 474) (2022). Consequently, we cannot say that the trial court abused its discretion in denying Calhoun's motion for new trial under OCGA § 51-12-12.

4. Finally, Calhoun argues that the trial court erred by not ordering a setoff of the jury's verdict based upon payments he made during the pendency of litigation in lieu of supersedeas bonds. Beyond recounting the facts surrounding the trial court's

pre-trial orders, Calhoun has failed to support his argument with any legal analysis or citation to authority to aid this Court's review of his claim. Indeed, it is hard for this Court to determine what actions taken by the trial court Calhoun alleges amounted to error. As best that this Court can tell, Calhoun argues that he is entitled to a setoff pursuant to OCGA § 13-7-5, which provides that "[b]etween the parties themselves, any mutual demands existing at the time of the commencement of the suit may be set off." "However, this type of set-off does not operate as a denial of the plaintiff's claim; rather, it merely allows the defendant to set-off a debt owed him by the plaintiff against the claim of the plaintiff. As such, it must be asserted as a counterclaim rather than as a defense." (Citation omitted.) *Stewart v. Stewart*, 236 Ga. App. 348, 349 (1) (511 SE2d 919) (1999). Calhoun made no such counterclaim; accordingly, to the extent that Calhoun alleges he is entitled to relief under OCGA § 13-7-5, this claim fails.

## Case No. A25A1476

Alex and David filed their cross-appeal in order to preserve appellate arguments should this Court reverse the jury's verdict. Because we affirm the jury's verdict and

12

damages award in A25A1416, we dismiss the cross-appeal as moot. See *Georgia Bone & Joint Surgeons v. Keel*, 376 Ga. App. 79, 86 (3) (918 SE2d 127) (2025).

*Judgment affirmed in Case No. A25A1416. Appeal dismissed as moot in Case No. A25A1476. Hodges, J., concurs. McFadden, P. J. concurs fully with Divisions 2, 3 and 4 and concurs specially with Division 1.*

A25A1416, A25A1476. PETERSON v. PETERSON et al.; and vice versa.

MCFADDEN, Presiding Judge, concurring fully with Divisions 2, 3 and 4 and concurring specially in Division 1.

I concur fully in the majority opinion except for Division 1, in which I concur specially. In Division 1 the majority holds that appellants' first and second enumerations of error are not properly before us. The first enumeration regards the *in terrorem* clause of the subject will. The second regards *inter vivos* powers. I disagree. We are obligated to address the merits of both issues. I would affirm as to both.

1. *Appellate jurisdiction*

Appellant's first and second enumerations of error challenge conclusions of law, rather than the rulings reflecting those conclusions.

1. The court erred in denying enforcement of the *in terrorem* clause in Mr. Peterson's Will.

2. The court erred in allowing the jury to decide whether Mrs. Peterson's use of the *inter vivos* power of appointment standing alone was subject to her fiduciary duties as a co-trustee of trusts created by the Will.

Appellant undertakes to identify the orders reflecting those conclusions of law under the heading Preservation of Error.

The first enumerated error was preserved by filing a summary judgment motion to enforce the in *terrorem clause*, and a motion in limine to exclude evidence that would be barred by enforcement of the *in terrorem* clause, both of which were denied. MSJ; MIL; MSJ Order; MIL Order. *Coregis Insurance Company v. Nelson*, 282 Ga.App. 488, 489 (2006) (appeal of summary judgment ruling after trial); *Williams v. Harvey*, 311 Ga. 439, 442 (2021) (denial of motion in limine preserves evidentiary issue).

The second enumerated error was likewise preserved by the motion for summary judgment regarding the powers of appointment, moving in limine to exclude evidence of lost support after the *inter vivos* power was invoked, and filing a trial brief on powers of appointment and

conflict issues (V2-986; V4-1019), as well as by seeking jury charges on the power of appointment issues (V2-891, 917-922; V4-924, 950-955; V21-66-69; V23-35-36), and by moving for a new trial due to power of appointment issues, which were also denied.

It is true that, in the first and second paragraphs of their Preservation of Error section, appellants rely in part on denials below of summary judgment and fail to mention the motion in for directed verdict that they made for the express purpose of preserving error. And it is true that those summary-judgment rulings have been rendered moot by the trial of the case.

But as to both issues, appellants point in their Preservation of Error section to denial of motions in limine. That is sufficient. "Once the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal." OCGA § 24-1-103 (a).

Moreover as to the *in terrorem* clause, once the appellees had rested, appellants "in order to preserve the record," moved "for directed verdict regarding that clause." After a brief colloquy, the trial court — who had denied summary judgment on the issue three days earlier — denied the motion, remarking "I know you're

3

surprised." It is true that appellants' brief references the lengthy summary judgment motion rather than the directed verdict motion.

But we may not rely on that oversight to excuse us from our "statutory duty to discern what errors an appellant is attempting to articulate." *Felix v. State*, 271 Ga. 534, 538 (523 SE2d 1) (1999). Accord *Interest of M. R. S.*, 321 Ga. 521 (915 SE2d 630) (2025). The majority's holding that appellant's "sole focus on appeal is the trial court's ruling on partial summary judgment" is a hostile reading of their brief. As such it is contrary to the command of OCGA § 5-6-48 (f):

> Where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from or what errors are sought to be asserted upon appeal, the appeal shall be considered in accordance therewith notwithstanding that the notice of appeal fails to specify definitely the judgment appealed from or that the enumeration of errors fails to enumerate clearly the errors sought to be reviewed.

And as to *inter vivos* powers, appellants' Preservation of Error section also cites — with citations indicating where they are "buried in this 40 volume record" — to requests for "jury charges on the power of appointment issues (V2-891, 917-922; V4-924, 950-955; V21-66-69; V23-35-36), and by moving for a new trial due to power of appointment issues" — which the majority does not address.

4

So I turn to the merits of the enumerations asserting that the court erroneously failed to enforce the in terrorem clause and *inter vivos* powers.

2. *In terrorem clause*

Under Georgia law, a trust instrument or will may include an *in terrorem* clause, also known as a no-contest clause, which "acts as a disinheritance device to dissuade beneficiaries of a trust or a will from challenging the terms of the instrument." *Slosberg v. Giller*, 314 Ga. 89 (876 SE2d 228) (2022). Here, the will in question contained such a clause, providing that if a beneficiary initiated proceedings to contest the validity of any provision of the will, "then all the benefits provided for such contesting beneficiary in this will are revoked and annulled." The appellant argues that the trial court erred in failing to find that the appellees had triggered this clause by filing proceedings contesting the validity of the will. I disagree.

The pleadings in question allege breach of fiduciary duties by the appellant and testator's wife as executors and trustees under the will, and seek enforcement of, or damages for the breach of, those fiduciary duties. Any purported challenge to the will was based on those alleged fiduciary breaches rather than contesting the terms of the instrument. Under these circumstances, the appellant has not shown that the trial court erred in failing to find that the *in terrorem* clause, which must be strictly

construed, was triggered. See *Preuss v. Stokes-Preuss*, 275 Ga. 437, 438 (569 SE2d 857) (2002) (*in terrorem* clauses must be strictly construed, and clause in question did not prohibit action to remove a co-executor); *In re Estate of Burkhalter*, 343 Ga. App. 417, 423 (2) (806 SE2d 875) (2017) (*in terrorem* clause may not punish litigation brought to compel the executor of a will to carry out its terms).

3. *Inter vivos powers*

Appellant contends that the trial court erred in allowing the jury to consider whether the exercise of the *inter vivos* powers of appointment by the testator's wife Mary were subject to her fiduciary obligations. But "[u]nder the law of the case doctrine, 'any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be.' OCGA § 9-11-60 (h)." *Southern States Chemical v. Tampa Tank & Welding*, 316 Ga. 701, 716 (3) (888 SE2d 553) (2023).

In a prior appeal of this case, we held that the inter vivos powers of appointment were subject to fiduciary duties: "As we find no law which could excuse Mary from her fiduciary duty under the trust, even if acting solely as a beneficiary under the trust, we find that the trial court erred in concluding that Mary could act exclusively in her

capacity as a beneficiary of both trusts in exercising her appointment power to convey trust assets." *Peterson v. Peterson*, 352 Ga. App. 675, 680 (1) (835 SE2d 651) (2023). And we further held that "Mary's fiduciary duties to all beneficiaries of the trust as a trustee and executor of the will remain in effect and Mary must exercise the degree of care and skill as a person of ordinary prudence would exercise in administering the trust." Id. at 681 (1) (citation and punctuation omitted).

The appellant argues that our prior decision in Peterson was erroneous. But "Georgia courts have never held that an exception exists to the law of the case doctrine where a prior ruling was clearly erroneous or would otherwise create a manifest injustice. To the contrary, [our Supreme] Court has said that the law of the case applies despite contentions that a ruling below is erroneous." *Southeastern States Chemical*, supra at 717 (3) (punctuation omitted). So under the law of the case, the appellant's enumeration of error does not show reversible error.